IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


SCOTTY SHREEVE                                                  PLAINTIFF


vs.                          Civil No. 2:19-cv-02105-PKH-MEF


ANDREW M. SAUL, Commissioner,                                  DEFENDANT
Social Security Administration


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Scotty Shreeve, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of a decision of the Commissioner of Social Security Administration (the "Commissioner")

denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security

Act (hereinafter "the Act"), 42 U.S.C. § 1382.  In this judicial review, the Court must determine

whether there is substantial evidence in the administrative record to support the Commissioner's

decision.  *See* 42 U.S.C. § 405(g).

### I.        Procedural Background

Plaintiff protectively filed his current application for SSI on May 16, 2016.  (ECF No. 11,

p. 20).  Plaintiff alleges disability since November 22, 2014, due to heart problems, back problems,

neck problems, knee and ankle problems, depression, and anxiety.  (*Id*., pp. 20, 64, 253).

Plaintiff's applications were denied initially and upon reconsideration.  (*Id*., pp. 20, 153-

56, 160-62).  An administrative hearing was held on August 9, 2017, before the Hon. Edward M.

Starr, Administrative Law Judge ("ALJ").  (*Id*., pp. 61-78).  Plaintiff was represented by counsel,

1

Will Murray, and testified.  (*Id*.).  After the hearing, the ALJ sent interrogatories to a vocational expert ("VE"), Kola Brown, and notified Plaintiff's attorney of the proffered evidence.  (*Id*., pp. 347-50, 352-53).  Plaintiff's counsel responded and objected on three points: (1) the VE's proposal that claimant could perform the job of document preparer, as the temperament code V from the U.S. Department *Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles* (1993) was in direct conflict with the ALJ's non-exertional mental limitations; (2) Plaintiff's extreme obesity should have been addressed in the hypotheticals posed to the VE, specifically Plaintiff's difficulties sitting in a typical work station; and, (3) the record was undeveloped with regard to Plaintiff's RFC and a physical consultative examination was required. (*Id*., pp. 355-56).

By written decision dated October 31, 2018, the ALJ found Plaintiff had the following severe impairments: hypertensive heart disease, obesity, affective disorder, anxiety disorder, and personality disorder.  (*Id*., pp. 17-36).  The ALJ next determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any impairment in the Listing of Impairments.  (*Id*., pp. 23-24).  The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> "[P]erform sedentary work as defined in 20 CFR 416.967(a), except the claimant cannot climb ladders, ropes, and/or scaffolds; the claimant can only occasionally climb stairs or ramps, can occasionally balance, crawl, kneel, stoop, and/or crouch; the claimant must avoid hazards including unprotected heights, moving machinery, and pulmonary irritants including dusts, odors, and gases; the claimant is limited to simple, routine, and repetitive tasks performed in a setting where interpersonal contact is limited to the work performed, and can respond to supervision that is simple, direct, and concrete."
> (*Id*., pp. 24-29).

The ALJ found that Plaintiff was unable to perform any of his past relevant work ("PRW"), but with the assistance of the VE the ALJ determined Plaintiff could perform the requirements of

the representative occupations of: circuit board assembly (DOT # 726.684-110), with 11,000 jobs in the national economy; document preparer (DOT # 249.587-018), with 30,000 jobs in the national economy; and, addresser (DOT # 209.587-010), with 6,000 jobs in the national economy. (*Id*., pp. 29-30).  The ALJ concluded that Plaintiff had not been under a disability as defined by the Act during the relevant period.  (*Id*.).

Plaintiff subsequently filed this action on August 15, 2019.  (ECF No. 2).  This matter is before the undersigned for report and recommendation.  Both parties have filed appeal briefs (ECF Nos. 14, 15), and the case is ready for decision.

## II.    Relevant Evidence

The undersigned has conducted a thorough review of the entire record in this case.  The complete sets of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

On January 25, 2016, Plaintiff was seen by Stephen Manus, M.D., a cardiologist.  (ECF No. 11, p 414).  Plaintiff reported doing well and being asymptomatic on a regimen of metoprolol. (*Id*., pp. 414-15).  Plaintiff weighed 530 pounds, and his blood pressure was 136/78.  (*Id*., p. 414). His pulse was 79 and his respiration was unlabored.  (*Id*.).  Upon examination, Dr. Manus noted that Plaintiff's cardiovascular exam was normal, and except for a suggestion of left ventricular enlargement which was consistent with prior tracings, his electrocardiogram (EKG) study was also unremarkable.  (*Id*.).  Dr. Manus assessed Plaintiff with asymmetric septal hypertrophy and very mild mitral and tricuspid insufficiency.  (*Id*.).  Dr. Manus continued Plaintiff's medications, noted Plaintiff knew that if he were to experience symptoms he should call or visit the emergency room, and noted a hope that Plaintiff would get his weight down.  (*Id*., p. 415).

On February 11, 2016, Dr. Manus provided a short note stating that Plaintiff's current medical condition made it very difficult for him to perform physical labor.  (ECF No. 11, p. 400).

On July 25, 2016, Plaintiff followed up with Dr. Manus and reported chest discomfort once or twice a day over a few months; and, prior to that, once a day with much greater than normal amounts of activity.  (ECF No. 11, pp. 447-443).  Plaintiff denied other symptoms, including shortness of breath, edema, calf or thigh pain, palpitations, flutters, tachycardia, dizziness, syncope, transient ischemic attack, pain in his legs while walking, and joint and muscle pain.  (*Id.*, p. 447).  Plaintiff weighed 531 pounds, and his blood pressure was 128/78.  (*Id.*).  Dr. Manus examined Plaintiff and noted that Plaintiff's cardiovascular exam was normal, and his EKG was similar to his previous tracings with a normal sinus rhythm, ventricular ectopic beat, and left ventricle enlargement.  (*Id.*, p. 447-48).  Dr. Manus also noted that he had trouble with arranging a nuclear stress test due to weight limits, and a CT angiogram would not likely produce good images.  (*Id.*, p. 479).  Dr. Manus discussed coronary angiography, heart catherization to define the anatomy, but Plaintiff wanted some time to think about it.  (*Id.*).  Dr. Manus ordered a 24-hour Holter monitor and suggested a nuclear stress test and noted that if Plaintiff changed his mind and wanted heart catheterization, he knew to let Dr. Manus know.  (*Id.*, p. 448).  Holter testing showed a normal sinus rhythm with an average heart rate of 75 beats per minutes, rare atrial ectopic beats with one episode of 5 atrial premature contractions in a row, and a rare ventricular ectopic beat.  (*Id.*, p. 483).  There were no sustained ectopic atrial or ventricular tachyarrhythmia and no bradyarrhythmia or high degree sinoatrial or atrioventricular block.  (*Id.*).

On September 6, 2016, Plaintiff saw Terry L. Efird, Ph.D., for a mental consultative examination.  (ECF No. 11, p. 493-96).  Plaintiff reported depression with a decreased interest in activities, sleep problems, low energy, weight gain, feelings of worthlessness and guilt, and

problems concentrating.  (*Id*.).  He also reported anxiety, particularly a history of excessive worry about financial matters, as well as irritability and muscle tension.  (*Id*.).  He further admitted having suicidal and homicidal ideations regularly.  (*Id*., p. 495).  Dr. Efird diagnosed Plaintiff with the following impairments: major depressive disorder, moderate to severe; anxiety disorder; and, unspecified personality disorder with mixed features.  (*Id*.).  Dr. Efird found: Plaintiff communicated in a reasonably socially adequate manner, but had strong body odor; he had the capacity to perform basic cognitive tasks required for basic work like activities; he was able to track and respond adequately; he had no remarkable problems with persistence, and appeared to have the mental capacity to persist with tasks if desired; and, he was able to perform basic work like tasks within a reasonable time frame.  (*Id*., p. 496).

On May 11, 2017, Plaintiff saw Dr. Zabakolas for an initial visit, as Dr. Manus had retired.  (ECF No. 11, p. 506).  Plaintiff reported a congenital heart condition and described his condition as stable.  (*Id*.).  Plaintiff denied chest pain, shortness of breath, palpitations, flutter, dizziness, back pain, and joint pain.  (*Id*.).  Plaintiff weighed 527 pounds, and his blood pressure was 130/84.  (*Id*., p. 507).  Dr. Zabakolas observed that Plaintiff's cardiovascular, pulmonary, musculoskeletal, and extremity exams were normal.  (*Id*., p. 507).  He assessed Plaintiff with morbid obesity, body odor, and benign hypertension.  (*Id*., p. 508).

Plaintiff saw Julio Schwarz, M.D., a cardiologist, on May 9, 2017.  (ECF No. 11, pp. 511-19).  Plaintiff reported a history of high blood pressure, hypertensive heart disease, and shortness of breath with exertion.  (*Id*., p. 513).  He told Dr. Schwarz that he had been diagnosed with a sick heart by Dr. Manus a few years prior.  (*Id*.).  In the review of symptoms, the record shows negative cardiovascular and respiratory symptoms, as well as no musculoskeletal symptoms.  (*Id*., p. 515).  Plaintiff weighed 524 pounds, and his blood pressure was 132/90.  (*Id*.).  Plaintiff's cardiovascular,

lung, and extremity exams were normal, and, except for some non-specific ST-T wave changes, Plaintiff's EKG was unremarkable. (*Id.*, p. 515). Dr. Schwarz assessed Plaintiff with dyspnea on exertion, essential hypertension, hypertensive heart disease, morbid obesity, and a family history of coronary artery disease. (*Id.*). Dr. Schwarz ordered an echocardiogram, which was done on June 15, 2017, and it showed an ejection fraction of 62 percent, left ventricular hypertrophy, atrial tricuspid regurgitation, and a slightly enlarged left atrium of 4.21 centimeters, with the rest of the study being unremarkable. (*Id.*, pp. 515, 540, 544). Dr. Schwarz assessed diagnoses of hypertensive heart disease, left ventricular diastolic dysfunction, and left atrial dilatation. (*Id.*, p. 521). Dr. Schwarz continued Plaintiff's medications and recommended that he lose weight. (*Id.*, p. 540).

Plaintiff was seen by Gayla Johnson, FNP, on January 12, 2018. (ECF No. 11, pp. 541-42). Plaintiff denied any cardiac symptoms, or any other symptoms, in the review of systems. (*Id.*, p. 541). Plaintiff weighed 510 pounds, and his blood pressure was 110/62. (*Id.*). FNP Johnson examined Plaintiff and noted his cardiovascular, lung, and extremity exams were normal, and his EKG was normal, except for some non-specific ST-T wave changes. (*Id.*, pp. 541-42). FNP Johnson assessed Plaintiff as stable from a cardiology standpoint and recommended that Plaintiff maintain a good level of physical activity. (*Id.*, p. 542).

### III.    Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it.

*Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision.  *Id.*

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience.  20 C.F.R. § 416.920(a)(4).  Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of

his residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 416.920(a)(4)(v).

## IV. Discussion

Plaintiff raises the following issues in this appeal: (1) whether the ALJ fully and fairly developed the record regarding Plaintiff's physical RFC; (2) whether the ALJ erred in not posing a hypothetical to the VE that captured all of plaintiff's limitations, particularly his extreme obesity; and, (3) whether ALJ failed to resolve a direct conflict between the ALJ's RFC assessment, the VE's testimony, and the DOT. (ECF No. 14).

### A. Development of the Record

Plaintiff contends the record overwhelmingly indicates the ALJ needed further assistance to rate Plaintiff's impairments. (ECF No. 14, pp. 2-3). He argues the ALJ's three attempts to procure opinion evidence from his treating physician, Dr. George Zabakolas, indicates there was not enough evidence in the record to assess Plaintiff's physical limitations. (*Id*.).

The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). However, the ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record. *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (quoting *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994)). While "[a]n ALJ should recontact a treating or consulting physician if a critical issue is undeveloped," "the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted).

8

In this case, the ALJ had adequate evidence in the record and did not err by failing to order a physical consultative examination. The ALJ considered Plaintiff's hearing testimony, a pain questionnaire, function reports from Plaintiff and his mother, and medical opinions, including the opinions of treating physician Dr. Stephen Manus, consultative examiner Dr. Efird, and state agency medical consultants. (ECF No. 11, pp. 23-29, 64-77, 118-19, 120-23, 138-39, 141-45, 271-81, 293, 297-303, 400, 493-96).

Plaintiff asks the Court to consider why the Office of Disability Adjudication and Review ("ODAR") contacted his primary care physician, George Zabakolas, M.D., three times to request that Dr. Zabakolas complete a medical source statement ("MSS") regarding Plaintiff's functional abilities if there was enough information on the record to make a decision. (ECF No. 14, pp. 2-3). Plaintiff fails to cite, however, any precedent for finding that diligence in trying to procure opinion evidence from a treating physician demonstrates that the ALJ lacked information necessary to make an informed decision. Rather, we have consistently found that there is no requirement that the ALJ base his RFC determinization on any one specific medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

In this case, the ALJ afforded some weight to the opinion of treating physician Dr. Manus that it is difficult for Plaintiff to perform physical labor, and the ALJ reduced Plaintiff's RFC to sedentary with additional limitations. (*Id*., p. 28). The ALJ also afforded great weight to consultative examiner, Dr. Efird, and he included mental restrictions in his RFC findings. (*Id*. pp. 25, 28). Finally, the ALJ afforded great weight to the mental and physical assessments rendered by the non-examining state agency consultants. (*Id*.).

There was sufficient evidence in the record from which the ALJ could make an informed decision concerning Plaintiff's disability claim. Further, "[r]eversal due to failure to develop the

record is only warranted where such failure is unfair or prejudicial." *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995). Notably, Plaintiff did not request a consultative physical examination prior to the administrative hearing, at the time of the August 2017 administrative hearing, or within a reasonable period following the hearing. The ALJ notified Plaintiff of Dr. Zabakola's refusal to provide an MSS via a letter dated May 21, 2018. (*Id.*, pp. 344-45). The letter informed Plaintiff that he had 10 days to submit comments or additional records, or to request a supplemental hearing and/or subpoenas for witnesses. (*Id.*). Plaintiff did not respond and only requested a consultative examination in his response to the proffer of the interrogatories presented to the VE on August 27, 2018, three months after he was notified of Dr. Zabakola's refusal to provide an MSS. (*Id.*, pp. 344-45, 355-56). Plaintiff fails to establish any prejudice from the ALJ's decision not to obtain any further medical evidence.

### B.   Hypothetical to Vocational Expert

Plaintiff argues the ALJ's hypothetical to the VE was inadequate because it did not capture all his limitations, particularly his extreme obesity. (ECF No. 14, pp. 3-5). Plaintiff argues the ALJ erred by not specifically addressing obesity in his interrogatories to the VE, as morbid obesity was a major medical issue for this Plaintiff. (*Id.*, p. 5).

A disability claimant has the burden of establishing his RFC. *Vossen*, 612 F. 3d at 1016. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 416.945(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller*, 784 F.3d at 479

(citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001)).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

"The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole."  *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (citing *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)).

Plaintiff argues the ALJ erred by failing to specifically include Plaintiff's obesity in his hypothetical to the VE.  (ECF No. 14, p. 4).  Plaintiff argues the ALJ was required to question the VE regarding Plaintiff's testimony that he would have difficulties sitting in a typical work station, and that failure to do so meant that the hypothetical failed to capture the consequences of Plaintiff's extreme obesity and, therefore, did not constitute substantial evidence.  (*Id.*).

Plaintiff's contention that the ALJ erred in posing a specific question to the VE regarding his obesity is incorrect.  Plaintiff did not allege obesity as an impairment in his initial application. Nor did Plaintiff describe an inability to sit in his function report, but rather he raised this allegation for the first time at the administrative hearing.  (ECF No. 11, pp. 65, 68-74, 269, 293, 297-303). However, even at the hearing, Plaintiff testified that his biggest physical problem was his heart. (*Id.*, p. 67).

Plaintiff cites only one piece of evidence to support his argument that morbid obesity was his primary diagnosis.  (ECF No. 14., p. 5).  That record, however, shows an assessment and plan for: morbid obesity due to excess calories; encounter to establish care; body odor; and benign hypertension.  (ECF No. 11, p. 506, 508).  Plaintiff also did not include obesity in his physical or mental conditions that limited his ability to work in his disability report of June 25, 2016, and he

did not mention obesity in his updated disability report on October 5, 2016. (*Id.*, pp. 253, 263). While not determinative, it is significant that Plaintiff did not allege the impairment of obesity in his application for disability benefits. *See Dunahoo v. Apfel*, 241 F.3d at 1039.

Plaintiff has not provided any medical evidence, nor any evidence beyond his own testimony, that he would be unable to use a standard workstation, and his testimony alone is insufficient to establish a limitation. *See Lane v. Comm'r of Soc. Sec.*, No. 2:18-CV-264-FTM-UAM, 14 2019 WL 2724013, at *4 (M.D. Fla. July 1, 2019) (finding that ALJ did not err by not including a limitation for a bariatric chair in RFC assessment) ("Plaintiff cites to no evidence, medical or vocational, establishing that she requires a bariatric chair. The only evidence supporting Plaintiff's claim that she requires a bariatric chair is her own testimony, which alone does not establish a limitation."); *Straite v. Berryhill*, No. 3:16-CV-00006-FDW, 2017 WL 4052170, at *4 (W.D.N.C. Sept. 13, 2017) (rejecting claimant's argument that the ALJ should have included a limitation for a bariatric chair in the RFC assessment). As the only evidence supporting Plaintiff's claim that he could not use a standard workstation was his testimony, the ALJ was not required to include a question to the VE concerning the use of a bariatric chair.

Because the ALJ's hypothetical to the VE captured the functional consequences of each of Plaintiff's recognized impairments, the hypothetical was proper and the VE's response constituted substantial evidence that supported the ALJ's step five finding. *See Hillier v. Social Security Administration*, 486 F.3d 359, 365-366 (8th Cir. 2007); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996).

### C.    Conflict between VE Testimony and the Dictionary of Occupational Titles

Plaintiff also argues the ALJ erred by relying upon VE testimony that conflicts with the job description in the DOT and its companion publication, *Selected Characteristics of Occupations*

("SCO"), without first recognizing and then resolving the conflict.  (ECF No. 14, pp. 6-7).
Specifically, Plaintiff argues the representative occupation of Document Preparer contains a
temperament code that is in direct conflict with the ALJ's RFC finding that Plaintiff was limited
to simple, routine, and repetitive tasks.  (*Id.*).

Plaintiff argues that while the hypothetical posed to the VE aligned with his RFC finding,
the hypothetical did not contain the proper set of limitations.  (ECF No. 14, pp. 6-7).  As noted
above, "[t]he ALJ's hypothetical question to the vocational expert needs to include only those
impairments that the ALJ finds are substantially supported by the record as a whole."  *Martise*,
641 F.3d at 927.  The ALJ's hypothetical question included all the limitations found to exist by
the ALJ and set forth in the ALJ's RFC determination.  Based on the previous conclusion that the
ALJ's RFC findings are supported by substantial evidence, the hypothetical question to the VE
was proper, and the VE's answer constituted substantial evidence supporting the Commissioner's
denial of benefits.  *Id.*; see also *Lacroix*, 465 F.3d at 889.

Plaintiff's argument is mistaken, as the documents the VE is required to resolve conflicts
with, the DOT and SCO, do not contain temperament codes.  Temperaments are not part of the
Department of Labor's published DOT or the SCO, as the agency illustrated with attached copies
of the print edition of the *Dictionary of Occupational Titles* and the *Selected Characteristics of
Occupations*.  (ECF Nos. 15-1 and 15-2).  Plaintiff's confusion is understandable, as WestLaw
does not make clear where the DOT excerpts end and supplemental sources begin, other than a
hyperlink midway through the page referring to the *Guide for Occupational Exploration*.
Nonetheless, the ALJ is only required to resolve conflicts between the VE testimony and the DOT
or SCO, not all supplemental sources.  SSR 00-4p, mandates: "When a [vocational expert] or
[vocational specialist] provides evidence about the requirements of a job or occupation, the

adjudicator has an affirmative responsibility to ask about any possible conflict between that [vocational expert] or [vocational specialist] evidence and the information provided in the [Dictionary of Occupational Titles]."   In this case, the ALJ did include a question in the interrogatories specifically asking whether there was any conflict between her answer and the DOT and/or the SCO, and the VE marked "no."  (ECF No. 11, p. 349).

Further, even if we were to accept the additional information in the online resource (which contains temperament codes not present in the print editions of the DOT or SCO), and thus find the VE's evidence regarding the document preparer position appear to conflict with the SCO, this would not be reversible error.  The ALJ relied on two additional jobs identified by the VE, circuit board assembly and addresser.  (ECF No. 11, pp. 25, 344).  Both of those positions have an "R" temperament code indicative of "repetitive, or short-cycle work."   726.684-110 Touch-up Screener, Printed Circuit Board Assembly, DICOT 726.684-110; 209.587-010 Addresser, DICOT 209.587-010, (SCO), App. D (1993), *available at* Westlaw.   Thus, the ALJ's error, if any, is harmless because the VE cited other jobs.  *See Grable v. Col*vin, 770 F.3d 1196, 1202 (8th Cir. 2014) (a VE's "mistaken recommendation" can be harmless error where the VE has recommended other work that a claimant can perform with her RFC); *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (to show error was not harmless, plaintiff must provide indication that ALJ would have decided differently had error not occurred); *Van Vickle*, 539 F.3d at 830.

Accordingly, the Court finds the ALJ did not err because there was not a conflict between the evidence offered by the VE, the DOT and the SCO.

## V.    Conclusion

For the reasons and upon the authorities discussed above, it is recommended that the ALJ's decision be affirmed and that Plaintiff's Complaint be dismissed with prejudice.

14

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  We remind the parties that objections must be both timely and specific to trigger de novo review by the District Court.**

DATED this 10th day of September 2020.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE